UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| JETE CROSBY | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-693 |
| BLUE CROSS/BLUE SHIELD OF LOUISIANA | SECTION: "S" (4) |

## ORDER AND REASONS

The Motion for Summary Judgment (Doc. # 14) by defendant Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana is **GRANTED**, dismissing plaintiff's claims against it.

### BACKGROUND

Plaintiff, Jete Crosby, is an insured under a health insurance plan issued by the defendant, Blue Cross/Blue Shield of Louisiana, through her husband's employer, John L. Crosby, LLC. Plaintiff suffers from "idiopathic cervical root resorption," which causes loss of teeth and requires bone, gingival, and dental implants. The defendant denied plaintiff's claim for coverage for treatment of this disease. Plaintiff filed suit, claiming that defendant's denial was arbitrary and

capricious.

*Relevant Plan Provisions*

The plan states:

> **ARTICLE XVI. LIMITATIONS AND EXCLUSIONS**
> ...
> B. ... Unless otherwise shown as covered in the Schedule of Benefits, the following are not covered, **REGARDLESS OF CLAIM OF MEDICAL NECESSITY:**
> ...
>
> 25. Dental Care and Treatment and dental appliances except as specifically provided in this Benefit Plan under Oral Surgery Benefits.[1]

"Dental Care and Treatment" is defined in the plan as:

> All procedures, treatment, and Surgery considered to be within the scope of the practice of dentistry, which is defined as that practice in which a person:
>
> A. represents himself/herself as being able to diagnose, treat, correct, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, jaws or associated parts and offers or undertakes by certain means to diagnose, treat, correct, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same;
>
> B. takes impressions of the human teeth or jaws or performs any phase of any operation incident to the replacement of a tooth or part of a tooth or associated tissues by means of a filling, crown, denture, or other appliance; or
>
> C. furnishes, supplies, constructs, reproduces, repairs or offers to furnish, supply, construct, reproduce, or repair prosthetic dentures, bridges, or other substitute for natural teeth to the user or prospective

---

[1] Doc. #14, Ex. 5, at BCBSLA-JC-0058 and 0063 (emphasis in original).

user.²

The plan provides limited oral surgery benefits as follows:

> **ARTICLE XII. ORAL SURGERY BENEFITS**
>
> Coverage is provided only for the following services or procedures:
> ...
>
> C. Dental Care and Treatment including Surgery and dental appliances to correct Accidental Injuries of the jaws, cheeks, lips, tongue, roof or floor of mouth, and of sound natural teeth. ...³

Accidental Injury is defined as:

> A condition occurring as a direct result of a traumatic bodily injury sustained solely through accidental means from an external force. With respect to injuries to teeth, injuries caused by the act of chewing do not constitute an injury caused by external force.⁴

The plan provides that if a claimant is dissatisfied with a coverage decision, the claimant has the right to pursue two levels of an internal administrative appeal.⁵ Under the plan, claimants are "encouraged to submit written comments, documents, records, and other information relating to the claim for benefits."⁶ The plan further provides that "[p]ersons not involved in previous decisions regarding the Member's claim will decide all appeals."⁷

---

²Doc. #14, Ex. 5, at BCBSLA-JC-0026.

³Doc. #14, Ex. 5, at BCBSLA-JC-0053.

⁴Doc. #14, Ex. 5, at BCBSLA-JC-0023.

⁵Doc. #14, Ex. 5, at BCBSLA-JC-0081-0082.

⁶Doc. #14, Ex. 5, at BCBSLA-JC-0081.

⁷Doc. #14, Ex. 5, at BCBSLA-JC-0082.

*Plaintiff's Claim for Benefits*

Plaintiff was referred by her dentist, Beth Saacks, DDS, to David A. Garger, DMD, and Maurice A. Salama, DMD, both periodontists,[8] because of severe pain in several teeth.[9] On November 28, 2006, the periodontists performed radiographic and CT scans, and diagnosed plaintiff with multiple idiopathic cervical root resorption of her mandibular teeth. The periodontists indicated on the defendant's health claim form that plaintiff's condition was not the result of an accident. On January 8, 2007, plaintiff had several teeth extracted, and had bone, gingival, and dental implants. The health claim form submitted by the periodontists indicated that the procedure was not necessitated by an accident. On May 15, 2007, plaintiff had additional dental implants; the periodontists again indicated on defendant's health claim form that the procedures were not necessitated by an accident.

On June 4, 2007, in a letter to defendant before the initial claims determination, plaintiff's attorney argued that the policy's dental exclusion did not apply because plaintiff's root resorption was part of a larger systemic autoimmune process, and not because of dental hygienic neglect. Plaintiff did not provide to defendant any additional reports or records from medical or dental providers. Plaintiff's claim was ultimately denied. Defendant treated her attorney's letter as a

---

[8]Periodontics is defined as the branch of dentistry that deals with diseases of the supporting and investing structures of the teeth including the gums, cementum, periodontal membranes, and alveolar bone. *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/periodontics.

[9]Although plaintiff argues her specialists are medical doctors, it is clear that all of those specialists who have rendered opinions are within the scope of the practice of dentistry.

request for a first level administrative appeal of the denial of her claim.[10]

In support of the first level of appeal, plaintiff's attorney submitted two letters from her treating dental providers. Beth Saacks, DDS, opined that plaintiff was in excellent dental health until she presented with "a rare condition of idiopathic cervical root resorption." Plaintiff's periodontists, Drs. Garger and Salama, opined that as to the procedures they performed, "[w]ithout this form of dentistry this patient would end up in complete dentures and completely edentulous."[11]

Defendant's medical director conducted the first level appeal, and stated in an internal email dated July 17, 2007, his conclusion that none of the periodontal services provided to plaintiff for treatment of severe idiopathic root resorption was covered under the limited oral surgery benefits in the plan.[12] By letter dated July 17, 2007, defendant informed plaintiff that the first level appeal was denied, and stated:

> ... The services performed were for the extraction of erupted teeth, not impacted teeth. Since this was not accident related and the teeth extracted were not impacted, these services were not covered under your limited oral surgery benefits of your policy. Therefore, these services are not eligible under your medical policy.[13]

By letter dated on July 26, 2007, defendant explained to plaintiff's counsel:

> ... As explained in the appeal response, the policy contains provisions for oral surgery benefits, and excludes dental care and treatment, unless it is to correct Accidental Injuries. You infer in your letter that

---

[10]Doc. #14, Ex. 5, at BCBSLA-JC-0104-0108.

[11]Doc. #14, Ex. 5, at BCBSLA-JC-0112 - 0113.

[12]Doc. #14, Ex. 5, at BCBSLA-JC-0099 and 0163.

[13]Doc. #14, Ex. 5, at BCBSLA-JC-0164.

> Ms. Crosby suffered an accidental injury; however, it is not supported upon review of the above information received.
>
> ...
>
> Your client has a diagnosis of severe idiopathic root resorption, which may be an autoimmune medicated [sic] problem. However, the etiology of the condition is not an issue relative to a coverage determination. The services provided your client (extractions other than for impacted teeth, periodontal surgery including bone and gingival grafts, and dental implants) are excluded by this benefit plan. The specific exclusion states: "Dental Care and Treatment and dental appliances except as specifically provided in this Benefit Plan under Oral Surgery Benefits." None of the billed services are covered by this limited oral surgery benefit.
>
> I realize the appeal response is not the response Ms. Crosby would like to receive; however, we must be mindful of our obligation to operate our business appropriately and within the parameters of our contracts and to apply those contractual provisions uniformly to all subscribers. ...[14]

On September 14, 2007, plaintiff's attorney requested a second level appeal, and argued for coverage, relying on a plan definition which provides that:

> ... Any operative procedure, treatment or service will not be considered Cosmetic Surgery if that procedure, treatment or service restores bodily function or corrects deformity of a part of the body that has been altered as a result of Accidental Injury, disease or covered Surgery.[15]

Plaintiff's attorney further argued that plaintiff's treatment was necessary to avert the spread of her disease to other areas of the face, skull and skeleton, and that the dental exclusion should not apply.[16]

---

[14]Doc. #14, Ex. 5, at BCBSLA-JC-0159-0160.

[15]Doc. #14, Ex. 5, at BCBSLA-JC-025 and 0153. Under Article XVI of the plan, regardless of medical necessity, "[s]ervices, supplies or treatment for cosmetic purposes, Cosmetic Surgery and any complications of Cosmetic Surgery, unless required for a Congenital Anomaly" are excluded. Doc. #14, Ex. 5, at BCBSLA-JC-0063.

[16]Doc. #14, Ex. 5, at BCBSLA-JC-00153-0154.

He also stated that while "no doctor has been able to pinpoint the precise cause[,] ... the literature points to chemical/drug reactions and 'trauma' as known causes."[17]

Defendant received several emails from members of the dental profession in support of plaintiff's appeal and coverage, all of which stated that plaintiff's condition was a dental and systemic medical condition.[18]

On September 25, 2007, defendant's second level administrative appeals committee, which was composed of individuals not involved in the previous denial reviews, voted to uphold the denial.[19] On October 29, 2007, defendant informed plaintiff by letter that the committee for the second level of appeal upheld the denial of her claim. Defendant stated that the denial was based on the plan's exclusionary language and the limited oral surgery benefits under the plan, and that "the treatment at issue is dental and therefore falls within the language of the exclusion. The coverage determination is based on the treatment involved and is not dependent on the nature or etiology of the condition."[20]

Defendant has moved for summary judgment, arguing that plaintiff's claim should be dismissed because the denial of her claim was not arbitrary and capricious, and because her state law claims are preempted by the Employee Retirement Income Security Act (ERISA).[21] Defendant

---

[17] Doc. #14, Ex. 5, at BCBSLA-JC-00154.

[18] Doc. #14, Ex. 5, at BCBSLA-JC-0195-200. Emails were received from David E. Holsey, DDS; Robert Boyd, an orthodontist; Robert Westermann, DDS; Robert Matlock, DDS; and Gordon J. Christensen, DDS.

[19] Doc. #14, Ex. 5, at BCBSLA-JC-0173.

[20] Doc. #14, Ex. 5, at BCBSLA-JC-0281.

[21] 29 USC §§1001, *et seq.*

7

further contends that summary judgment is appropriate because plaintiff is unable to prove that defendant was arbitrary and capricious in its denial of plaintiff's claim for benefits. Plaintiff denies that ERISA applies to the insurance policy at issue, and argues that questions of fact preclude a ruling on whether Blue Cross was arbitrary and capricious in denying plaintiff's claim.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[22] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[23]

### B. ERISA Application and ERISA Preemption

"ERISA's preemption of state law claims is extensive,"[24] and "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) ..."[25] ERISA regulates employee benefit plans, including those providing medical and hospital care, if the plan is established or maintained "by any employer engaged in commerce

---

[22] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[23] *Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

[24] *McNeil,* 205 F3d. at 191.

[25] 29 USC §1144(a) ("This section shall take effect on January 1, 1975.").

8

or in any industry or activity affecting commerce."[26] Whether an employer is involved in interstate commerce, and the extent of that involvement, "at least for ERISA purposes, is not a matter of degree."[27] The existence of an ERISA plan within the statutory definition is a question of fact unless the factual circumstances are established as a matter of law or are undisputed.[28]

Defendant attaches a copy of plaintiff's insurance application which was signed by plaintiff and her husband, Thomas N. Crosby, and a copy of the schedule of benefits to the policy which reflects that plaintiff is covered by a policy issued to her husband, and that her husband is an employee of John L. Crosby, LLC. Defendant argues that the policy in question was established and maintained through John L. Crosby, LLC, the employer of plaintiff's husband; and that "Crosby Development, LLC" is an affiliate of John L. Crosby, LLC. Defendant asserts that John L. Crosby, LLC, is "engaged in commerce and/or in any industry or activity affecting commerce" because it builds residential units incorporating materials manufactured outside the State of Louisiana; sells homes to persons inside and outside Louisiana; and rents property to tenants which have locations in multiple states.[29]

Plaintiff argues that "Crosby Development, LLC" is not engaged in interstate commerce because the company's "product" is "Louisiana real estate" which "is not susceptible of being

---

[26] 29 U.S.C. §1003(a).

[27] *McNeil v. Time Ins. Co.*, 205 F3d. 179, 191 (5th Cir. 2000).

[28] *House v. American United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007), *cert. den.*, 128 S.Ct. 1309 (2008).

[29] Defendant provided a certified copy of an act of sale, showing a sale between Crosby Development Company, LLC, and Lucille and Baldasaro Carollo of Destin, Florida, and a copy of the company's website which depicts the names of several businesses which have multiple state locations.

shipped across state lines," and that therefore, the insurance policy is not governed by ERISA. However, plaintiff offers no evidence to support that "Crosby Development LLC" was her husband's employer, or that "Crosby Development, LLC" or "John L. Crosby, LLC" are not engaged in interstate commerce.[30]

Considering the evidence before the court, the court finds, as a matter of law, that the health plan at issue is one which has been established or maintained by an employer "engaged in commerce or in any industry or activity affecting commerce." There being no question of material fact, defendant is entitled to summary judgment that the policy at issue is subject to ERISA. ERISA "preempts a state law claim if that claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan ..."[31] Because ERISA applies to plaintiff's claim for benefits, state law is preempted, and thus, plaintiff's state causes of action are dismissed. The court will apply ERISA standards to plaintiff's claims.

## C. ERISA Standard of Review

Under the standard established in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), a fiduciary's decisions on plan terms and eligibility for benefits under the plan are subject to *de novo* review in the district court "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[32]

---

[30]*See Russell v. U.S.*, 471 U.S. 858, 862 (1985)(local rental of real estate is an activity affecting interstate commerce) and *also United States v. Carona*, 108 F3d. 565, 570 n. 1 (5th Cir. 1997).

[31]*McNeil*, 205 F.3d at 191.

[32]*Bruch*, 489 U.S. at 115.

10

If the plan grants such discretion, the administrator or the fiduciary's determinations are reviewed only for abuse of discretion.[33] Under an abuse of discretion standard, the court considers whether the administrator's actions were arbitrary and capricious.[34] The fact of a dual role as administrator and insurer "provides a minimal basis for a potential conflict of interest."[35] Where the dual role creates a conflict of interest, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits."[36]

Plaintiff argues that John L. Crosby, LLC, and not the defendant, is the plan administrator, and that John L. Crosby, LLC's determination that benefits extend to plaintiff's condition is entitled to deference. Defendant contends that although the policy names John L. Crosby, LLC as the plan administrator, the plan grants to defendant full discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

The insurance policy provides:

> The Company [previously defined as Blue Cross and Blue Shield of Louisiana] has full discretionary authority to determine eligibility for Benefits and/or to construe the terms of this Benefit Plan.[37]

This provision makes defendant a fiduciary of the plan because it gives to defendant full discretionary authority to make benefit decisions under the plan. Hence, under *Bruch*, defendant's

---

[33] *See Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *Bruch*, 489 U.S. at 115.

[34] *Lain v. UNUM Life Ins. of America*, 279 F.3d 337, 342 (5th Cir. 2002).

[35] *Corry*, 499 F.3d at 398.

[36] *Metropolitan Life Ins. Co. v. Glen*, 128 S.Ct. 2343, 2346 (2008).

[37] *See* Doc. 14, Ex. 5, at BCBSLA-JC-0072. *See also* Doc. 14, Ex. 5, at BCBLA-JC-0014

coverage determinations are subject to an abuse of discretion standard, with consideration of the conflict.

**4. Review of Defendant's Denial Determination**

The Fifth Circuit applies "a two-step process when conducting [an] abuse of discretion review."[38]

> First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider:
>
> (1) whether the administrator has given the plan a uniform construction,
>
> (2) whether the interpretation is consistent with a fair reading of the plan, and
>
> (3) any unanticipated costs resulting from different interpretations of the plan.[39]

"The most important factor in this three-part analysis is whether the administrator's interpretation was consistent with a fair reading of the plan."[40]

If the fiduciary's interpretation of the plan was legally correct, "the inquiry ends and there

---

[38]*Stone v. Unocal Termination Allowance Plan*, ____ F.3d ____, 2009 WL 1479405 at *4 (5th Cir. 2009).

[39]*Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 269-70 (5th Cir. 2004).

[40]*Stone,* 2009 WL 1479405 at *5.

12

is no abuse of discretion."[41] "Alternatively, if the court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion. Only upon reaching this second step must the court weigh as a factor whether the administrator operated under a conflict of interest."[42]

*A. Legally Correct Interpretation of the Plan*

Plaintiff is claiming benefits for several tooth extractions, and bone, gingival and dental implants performed in connection with her idiopathic cervical root resorption. Defendant informed plaintiff that it denied the claim because under Article XVI of the plan, dental care and treatment are excluded under the plan regardless of medical necessity, and because plaintiff's claim did not trigger Article XII which provides for limited oral surgery benefits.

As to the first factor, plaintiff argues that defendant has not given the plan a uniform construction. There is no evidence in the record whether defendant has given the plan a uniform construction. The court notes, however, that on July 26, 2007, defendant responded to plaintiff that defendant "must be mindful of our obligation to operate our business appropriately and within the parameters of our contracts and to apply those contractual provisions uniformly to all subscribers." Because there is no evidence as to whether defendant has given the plan a uniform construction, the

---

[41]*Stone,* 2009 WL 1479405 at *4. *See also Ellis,* 394 F.3d at 269-70 and *Tolson v. Avondale Industries, Inc.,* 141 F.3d 604, 608 (5th Cir. 1998)("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.")

[42]*Stone,* 2009 WL 1479405 at *4 (citations omitted).

court will proceed to the other two factors.[43]

As to whether defendant's interpretation is consistent with a fair reading of the plan, the eligibility for benefits under the plan "is governed in the first instance by the plain meaning of the plan language."[44] "ERISA plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience."[45]

Plaintiff argues that the claimed procedures and treatment should be covered because her condition is the result of an ongoing systemic disorder or disease process, and because the treatment was necessary to prevent further damage to skeletal structures elsewhere in her head and body. Defendant argues that the cause of plaintiff's condition and whether plaintiff's treatment was medically necessary are not determinative of coverage. Defendant contends that the plan clearly excludes dental care and treatment, regardless of medical necessity, unless due to accidental injury, or under the limited coverage provided as Oral Surgery Benefits.

The procedures at issue in plaintiff's claim for benefits were performed by dentists with a specialty in periodontics. The procedures performed by the periodontists are excluded under the plan's definition of "Dental Care and Treatment." All the procedures which form the basis of plaintiff's claim for benefits were performed by members of the dental profession. Further, the procedures performed (tooth extraction and bone, gingival, and dental implants) are within the scope

---

[43] *Attenberry v. Memorial-Hermann Healthcare Systems ex rel. Attenberry*, 405 F.3d 344, 349 (5th Cir. 2005), *cert. den., Memorial-Hermann Healthcare Sys. v. Ethridge*, 546 U.S. 936 (2005).

[44] *Stone,* 2009 WL 1479405 at *6 (citation omitted).

[45] *Stone,* 2009 WL 1479405 at *6 (citation omitted).

14

of the practice of dentistry. Article XVI of the plan excludes coverage for dental care and treatment, regardless of medical necessity. The fact that plaintiff's condition may be part of a larger disease process and that the treatment may be medically necessary does not change the provisions of the plan excluding dental care and treatment.[46]

Article XII of the plan provides a limited oral surgery benefit to correct accidental injuries which are defined under the plan as injury that is the "direct result of a traumatic bodily injury sustained solely through accidental means from an external force." The evidence demonstrates that plaintiff's condition is not the result of accidental injury which would trigger the limited oral surgery benefits in Article XII. Having reviewed the relevant provisions of the plan and the administrative record, the court concludes, as a matter of law, that defendant's interpretation of its plan was legally correct.[47]

B. *Completeness of Record*

The Fifth Circuit has stated:

> ... A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator. ...
>
> ... Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions. To date, those exceptions have been related to either interpreting the plan or explaining medical terms and procedures relating to the claim.

---

[46] The court notes that the administrative record does not contain an opinion from a medical doctor that the origin of the plaintiff's disease was systemic, and therefore covered under the medical coverage of the plan.

[47] Having concluded that the interpretation was legally correct, it is unnecessary to proceed to the third inquiry; i.e., unanticipated costs to defendants, or to analyze whether the decision was an abuse of discretion. *Ellis*, 394 F.3d at 270.

15

Thus, evidence related to how an administrator has interpreted terms of the plan in other instances is admissible. Likewise, evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim would be equally admissible. However, the district court is precluded from receiving evidence to resolve disputed material facts - i.e., a fact the administrator relied on to resolve the merits of the claim itself.[48]

It is not the plan administrator's duty to investigate:

If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require an administrator to obtain that information in the absence of the claimant's active cooperation.[49]

Plaintiff suggests that defendant did not investigate the claim correctly, and that the administrative record is incomplete. Plaintiff argues that defendant failed to collect properly relevant information. However, plaintiff does not identify what information that defendant failed to obtain, or how the allegedly missing information would have been in her favor. Plaintiff's suggestion of missing records does not give rise to an issue of material fact that would preclude summary judgment in defendant's favor, absent a showing of what is missing from the record and its relevance.[50]

---

[48] *Vega*, 188 F.3d at 298 (summary judgment affirmed for insurer against plaintiffs attempting to recover surgery costs)(citations omitted).

[49] *Vega*, 188 F.3d at 298.

[50] Plaintiff argues that she provided defendant medical authorizations to obtain her medical records, but those medical records are not contained in the administrative record. Plaintiff does not identify which medical records are not included, nor explain why the missing medical records would have been in her favor or why these records were not submitted by her. Plaintiff argues that the following response to a request for admission is proof of an incomplete administrative record:

Blue Cross admits that the materials provided by Blue Cross in its Rule 26 disclosures, Bates-labeled for identification as BCBSLA-JC-0001-0282, constitute the Administrative Record related to the benefits determination at issue in the captioned case, and includes the entirety of the materials: (a) given to and reviewed by the medical director for the first-level administrative appeal; and, (b) given to and reviewed by the appeals-committee of the second-level administrative appeal.

Having considered the administrative record, the memoranda filed by the parties, and the applicable law, the defendant's motion for summary judgment is **GRANTED** and plaintiff's claims against the defendant are dismissed.

New Orleans, Louisiana, this   2nd   day of July, 2009.

**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

---

This Administrative Record contains all information submitted by, or on behalf of, Plaintiff in support of her appeal.

The court notes that this excerpted response by defendant to the request for admission was provided to plaintiff after plaintiff's unresolved motion to compel. The court finds that defendant's excerpted response is not proof of an incomplete administrative record.