UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JETE CROSBY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-0693** |
| **BLUE CROSS BLUE SHIELD OF LOUISIANA, ET AL.** | **SECTION: "S" (4)** |

<u>ORDER</u>

Before the Court is a **Motion to Strike and for Protective Order (R. Doc. 209)**, filed by

Plaintiff, Jete Crosby, ("Crosby") seeking an Order from this Court protecting the confidentiality of

and striking from the record any pleadings(s) which contain a single page of an eight-page letter sent

on November 13, 2006 from Gary Gambel, Esq., ("Gambel") to Crosby ("November 13, 2006

Letter"),[1] as well as prohibiting Defendant, Blue Cross Blue Shield of Louisiana, ("Blue Cross") from

further use or reference to that page of the November 13, 2006 Letter.  The motion is opposed (R. Doc.

213).  The motion was heard by oral argument on Wednesday, October 10, 2012.

I.      <u>Factual Background</u>

Crosby filed this suit seeking health insurance benefits from her policy with Blue Cross.  (R.

Doc. 1-1, p. 2).  Crosby alleges that she suffers from a rare condition which leads to severe idiopathic

root and bone resorption, by which Crosby would lose all of her teeth, a portion of her jaw, and a

portion of her face.  *Id.*  She alleges that she incurred treatment for the condition, and submitted a

proper proof of claim to Blue Cross, but the claim was denied by Blue Cross because of asserted

---

[1]Technically, Gambel sent the November 13, 2006 Letter to both Jete and Thomas L. Crosby.

exclusions in the policy.  *Id.* at 2-3.  According to Crosby, this resulted in her paying out of pocket for the costs of her treatment, which has resulted in extreme financial hardship and mental anguish.  *Id.* at 4.

In support of the motion, on November 13, 2006, prior to filing suit in the instant matter, Gambel, an attorney who currently represents Crosby, sent her the November 13, 2006 Letter, which contained an interpretation of certain provisions in Crosby's Blue Cross benefits plan.  This document contains phrases such as "we can argue, "we may argue," "our job is to find a means by which to argue," and "[i]t is my suggestion that we attack."  The document also discusses strategy with regards to procedure on the claim and Crosby's course of treatment.

As to the instant motion, Crosby seeks an Order striking the excerpted letter from Blue Cross' Motion for Summary Judgment and Blue Cross' Opposition to Crosby's Motion for Summary Judgment, as well as a protective order prohibiting any further use of the letter.  The motion is opposed.  (R. Doc. 213).  The motion was heard by oral argument on Wednesday, October 10, 2012.

## II.   <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any *non-privileged matter* that is relevant to any party's claim or defense."  *Id.* (emphasis added).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ."

2

*Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.*  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id.* at 26(b)(2)(C)(iii).

**III.**   **Analysis**

**A.**   **Motion to Strike**

The first issue is whether the excerpt, as included as Exhibit A to Blue Cross' Motion for Summary Judgment (R. Doc. 195-4), and as Exhibit A to Blue Cross' Opposition to Crosby's Motion for Summary Judgment (R. Doc. 203-4), should be struck from those documents because it is not competent summary judgment evidence.

In support of the Motion, Crosby argues that the document was improperly placed into the record because not only was it privileged, but it was also hearsay without any exception.  (R. Doc. 209-1, p. 5).  Blue Cross does not raise any objection to this in their opposition.  At oral argument, Crosby presented the entire November 13, 2006 Letter to the Court for its review.

Federal Rule of Civil Procedure ("Rule") 12(f) states that "The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* "A disputed question of fact cannot be decided on a motion to strike." *Augustus v. Board fo Public*

*Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962); *see United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (citing *Augustus*).  Therefore, motions to strike a claim or defense are viewed with disfavor.  *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057-58 (5th Cir. 1982).  Other courts have extended Rule 12(f) to the summary judgment context.  *See Chicca v. St. Luke's Episcopal Health System*, 2012 WL 651776, at *1 (S.D. Tex. Feb. 27, 2012).

In this case, however, the standards of Rule 12(f), or even the cases which have extended Rule 12(f) to the summary judgment context, are irrelevant because the excerpt of the November 13, 2006 Letter concerns neither the resolution of a disputed issue of material fact, nor the disposition of a claim or defense.  Instead, the issue raised in Crosby's Motion to Strike is whether the excerpt is *competent* summary judgment evidence.  Federal Rule of Civil Procedure ("Rule") 56 "states that a court may consider only admissible evidence in ruling on a summary judgment motion."  *Mersch v. City of Dallas, Tex.*, 207 F.3d 732, 734-35 (5th Cir. 2000); *Elwakin v. Target Media Partners Operating Co., LLC*, --- F. Supp. 2d ----, 2012 WL 4794354, at *4 (E.D. La. Oct. 9, 2012) (Roby, M.J.) (citing *Mersch*).

Under the Federal Rules of Evidence, "'[h]earsay' is a statement, other than one made by the declarant . . . offered to prove the truth of the matter asserted."  Federal Rule of Evidence ("F.R.E.") 801(c).  "Hearsay is not admissible except as provided by these rules."  *Id.* at 802.  The excerpt of the November 13, 2006 Letter, which is a communication from a lawyer to his client, is hearsay not within any exception.

Accordingly, the Court grants Crosby's motion to strike on this limited ground.  Having found consideration of the Rule 56 admissibility requirements sufficient to grant Crosby's Motion to Strike, the Court does not pass on whether Crosby's motion should be granted due to the excerpt's

"redundant, immaterial, impertinent, or scandalous matter," or whether it triggers any potential privilege.[2]

**B.**     **Motion for Protective Order**

The issue is now whether the November 13, 2006 Letter, either as excerpted or in its entirety, should be protected from further disclosure based on an assertion of privilege.

**1.**     **Specific Instances of Production Evaluated Herein**

The parties do not necessarily agree on when, in particular, the November 13, 2006 Letter at issue was produced.  According to Crosby, it was provided to Blue Cross for the first time during the deposition of Crosby's treating physicians, Drs. Garber and Salama, and was provided to them only because "in that moment, it was simply the most conveniently accessible document containing reproduced definition provisions found in the applicable policy."  (R. Doc. 209-1, p. 2).  Crosby also states that the file was "maintained by the doctors as part of Mrs. Crosby's medical records."  (R. Doc. 209-1, p. 3).

In opposition, Blue Cross argues that the excerpt was produced several times prior to the deposition.  Specifically, Blue Cross argues that it first obtained possession of the excerpt through a subpoena propounded on Crosby's dentists, Goldstein, Garber & Salama, LLC., to which they responded on March 1, 2012.  (R. Doc. 213, p. 3).  On March 5, 2012, Blue Cross then provided Crosby with the documents provided by Goldstein, Garber & Salama, LLC, which they contend included the excerpt; however, Crosby failed to contest the inclusion of the excerpt for almost seven months.  *Id.*  Finally, during the deposition, the excerpt was offered and Crosby voiced no objection. *Id.*

---

[2]Although the motion for summary judgment is not before the Court, the instant motion, which requested relief in part on the motion to strike based on the competency of the evidence for purposes of summary judgment, was referred from the presiding U.S. District Court Judge to the Undersigned U.S. Magistrate Judge.

The Court notes that there is no apparent disagreement whether the document was produced by Crosby to her dentists, Goldstein, Garber & Salama, LLC.  Similarly, the parties do not dispute that the document was in fact relinquished during the deposition of Drs. Garber and Salama.  However, the parties do not appear to agree that the file was in fact produced by Goldstein, Garber & Salama, LLC in their response to Blue Cross' subpoena.  (R. Doc. 209-1, p. 3).   Notably, Blue Cross argues that the subpoena was propounded upon Goldstein, Garber & Salama, LLC in late February, 2012, and returned on March 5, 2012.  (R. Doc. 213, p. 3).  Blue Cross further argues that the deposition of Drs. Garber and Salama occurred on August 5, 2012.  *Id.* at 4.  At oral argument, Crosby stated that "at some point" Crosby, despite forewarnings from Gambel, released the excerpt to her doctors.  Crosby also stated that at the above-mentioned deposition, "the doctors" stated that they never saw the record, but that it went into their business file.

The Court further notes that, to support its position that it obtained the document through a subpoena directed at Crosby's doctors, Blue Cross submits only its transmittal letter stating that a disk of discovered documents had been produced.  (R. Doc. 213-1, p. 1).

In sum, the Court finds that the parties agree that the facts to be considered in the Court's privilege evaluation are (1) Crosby's relinquishment of the excerpt to Goldstein, Garber & Salama, LLC, and (2) the introduction of the document during the depositions of Drs. Garber and Salama.

## 2.    Application of Privilege Law

Crosby explicitly invokes the attorney-client privilege and the work product doctrine as bases for her claim.  (R. Doc. 209-1, pp. 2-3).  Further, in support of her motion, Crosby argues that she relinquished the excerpt from the November 13, 2006 Letter to Goldstein, Garber & Salama, LLC because she believed that "a privilege existed for purposes of the parties' mutual preference in furtherance of Mrs. Crosby's inquiry into the insurance coverage issue."  (R. Doc. 209-1, p. 2).

6

Elsewhere in the record, Crosby objects to a request to produce the November 13, 2006 Letter because "plaintiff apparently inadvertently revealed a portion of an attorney-client privileged communication solely to show Plan language to her doctor, a person covered by the doctor/patient privilege." (R. Doc. 213-1, p. 26).

Blue Cross does not specifically object to this assertion, and it was not raised at oral argument. The Court construes Crosby's assertion of privilege as an attempt to assert both a doctor-patient privilege, as well as a "common interest" privilege. Therefore, the Court finds that Crosby has raised four separate arguments in the instant motion: privilege arguments for (1) common legal interest, (2) doctor-patient, (3) attorney-client, as well as an argument for application of (4) the work product doctrine.

### a.        Common Legal Interest

The first issue is whether any "common legal interest" privilege can apply to the November 13, 2006 Letter. As noted above, Crosby argues that she gave the excerpt from the November 13, 2006 Letter to Goldstein, Garber & Salama, LLC because she believed "a privilege existed for purposes of the *parties' mutual preference* in furtherance of Mrs. Crosby's inquiry into the insurance coverage issue." (R. Doc. 209-1, p. 2) (emphasis added). Although somewhat opaque, it is possible that this statement could be construed as an argument for application of the "common legal interest" privilege between Crosby's doctors and Crosby, given at Crosby's doctors would be submitting insurance claims to Blue Cross for payment of Crosby's bills. Blue Cross does not specifically object to this assertion, and it was not raised at oral argument.

In the Fifth Circuit "the two types of communications protected under the [common legal interest] are: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between *potential* co-defendants and their counsel." *In re Santa Fe International*

*Corp.*, 272 F.3d 705, 711 (5th Cir. 2001).  "[I]t is questionable in the Fifth Circuit whether the common interest doctrine extends to plaintiffs." *Stanley v. Trinchard*, No. 02-1235, 2005 WL 230938, at *1 (E.D. La. Jan. 27, 2005).  The Court has found no authority in this circuit which extends "common legal interest" principles to plaintiffs.

Therefore, Crosby's physicians plainly do not fall under the Rule because Crosby is the *plaintiff* in this suit, and there is no indication that she will be occupying a defensive posture in this case.  Therefore, to the extent that Crosby's statement asserts privilege on the basis of "common legal interest," it is denied.

### b.      Doctor-Patient Privilege

The next issue is whether a doctor/patient privilege exists can apply to the November 13, 2006 Letter.  As noted above, Crosby argues that she gave the excerpt to her doctors because "a privilege existed for purposes of the parties' mutual preference in furtherance of Mrs. Crosby's inquiry into the insurance coverage issue."  (R. Doc. 209-1, p. 2).  Further, Crosby also explicitly characterizes the November 13, 2006 letter as falling under the "doctor/patient privilege" in its response to Blue Cross' September 5, 2012 discovery request.  (R. Doc. 213-1, p. 26).  Again, Blue Cross does not specifically object to this assertion, and it was not raised at oral argument.

Application of privilege law depends on the jurisdictional basis of the claim.  Federal common law, including privilege law, controls in cases brought under "federal question" jurisdiction.  28 U.S.C. § 1331; F.R.E. 501.  In this case, the court's jurisdiction over the claim is premised upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  ERISA claims are construed under the Court's "federal question" jurisdiction.  *See, e.g.*, *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 52-53 (1987).

The Fifth Circuit has "concluded that there is no doctor-patient privilege under federal law." *United States v. Moore*, 970 F.2d 48, 50 (5th Cir. 1992). Admittedly, the U.S. Supreme Court has recognized the existence of a "psychotherapist-patient privilege." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996). However, courts in the Fifth Circuit have recognized that *Moore*'s ruling survived *Jaffe*, and that a specific doctor-patient privilege does not exist under federal common law. *See, e.g.*, *Martin v. Lafon Nursing Facility of Holy Family, Inc.*, 244 F.R.D. 348, 351 (E.D. La. 2007); *U.S. ex rel Stewart v. Louisiana Clinic*, No. 99-1767, 2002 WL 31819130, at *2 (E.D. La. Dec. 12, 2002).

Because the Fifth Circuit does not recognize a doctor-patient privilege, Crosby "reliance" on the same when providing the excerpt to Goldstein, Garber & Salama, LLC is invalid. No doctor-patient privilege protects disclosure of the November 13, 2006 Letter.

### c.        Attorney-Client Privilege

The next issue is whether the attorney-client privilege protects disclosure of the November 13, 2006 Letter.

### i.        Application of the Privilege

The first question is whether the privilege applies. In support of the motion, Crosby argues that the communication, part of a back-and-forth exchange between Crosby and her attorney regarding Crosby's medical condition, was designed to aid Crosby in possible future litigation by outlining policy coverage, and thus is protected from disclosure either under the attorney-client privilege. (R. Doc. 209, pp. 2-4). Crosby argues that mere disclosure to a third party is insufficient in itself to waive the attorney-client privilege. *Id.* at 4. Further, Crosby contends that Blue Cross cannot surmount the strong public policy against disclosure of attorney-client communication or attorney work product, and cannot show a "compelling need" for such information. *Id.* at 5. She further contends that because the excerpt is both irrelevant and privileged, it should be returned. *Id.* at 5.

In opposition, Blue Cross argues that the November 13, 2006 Letter cannot be viewed as privileged because it was generated by Gambel and transmitted to Crosby too far in advance of the events of this case – specifically, one month after Crosby's diagnosis, two weeks prior to Crosby's consultation with her treating periodontists, approximately three months prior to Crosby's submission of her claim to Blue Cross, and over a year prior to Crosby's filing of the instant litigation.  (R. Doc. 213, p. 2).  Blue Cross replicates the one page of the document which is in its possession, which reads:

> Unfortunately, our job is to find a means by which to argue that your treatment does not fall within the scope of this definition or that it falls within one of the exceptions (such as the "Accidental Injury" definition).  As is discussed below, we need an expert to place your condition and/or your treatment beyond the practice of dentistry.

(R. Doc. 213, p. 3).[3]

The attorney-client privilege shields "communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice," and "communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications."  *Hodges, Grant & Kaufman v. United States Government*, 768 F.2d 719, 720-21 (5th Cir. 1985).  "The application of the attorney-client privilege is a question of fact, to be determined in light of the purpose of the privilege and guided by judicial precedents."  *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994).  "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue.  Nevertheless, involvement of an attorney is a highly relevant factor."  *Transocean Deepwater, Inc. v. Ingersoll-Rand Co.*, No. 08-448, 2010 WL 5374744, at *3 (E.D. La. 2010) (internal quotation omitted).

Here, the November 13, 2006 Letter was written by Gambel, Crosby's current counsel, and it contains statements such as "we can argue," "we may argue," "our job is to find a means by which to argue," and "[i]t is my suggestion that we attack."  These statements pertain to an analysis of Crosby's

---

[3]Blue Cross also argued that the Crosby had failed to produce the document on privilege logs which it had submitted in connection with prior discovery requests.  (R. Docs. 213, p. 5; 213-1, pp. 17, 20).  This issue will be discussed below in Subsection C.

insurance policy provisions.  Notwithstanding the fact that the letter was written on November 13, 2006, and Crosby commenced suit over a year later, on December 6, 2007,[4] the November 13, 2006 Letter is unquestionably provides legal advice.  As such, the Court finds that the it can be protected under the attorney-client privilege.

### ii.        Waiver of the Privilege

The next question is whether Crosby waived the attorney-client privilege when disclosing it to a third party.  "The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."  *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989).  Moreover, "[b]ecause the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests."  *Hodges*, 768 F.2d at 721.

In this case, the Court has already disposed of Crosby's subjective belief that a privilege existed between herself and her doctors at the time she made her disclosures.  Because the document contains interpretation of Blue Cross' policy provisions as well as recommendations for how her treatment plan should proceed, Crosby doubtlessly submitted her attorney's statement to her treating doctors so that they could act upon it in either crafting or modifying a treatment plan for Crosby.  Therefore, her submission was clearly an "affirmative act for [her] own benefit."  *Conkling*, 883 F.2d

---

[4]Crosby originally filed suit in Louisiana state court.  (R. Doc. 1-1, p. 2).  Her suit was duly removed on January 18, 2008.

at 434.[5]  Therefore, the document is not entitled to protection under the attorney-client privilege because the disclosure to her doctors waived any privilege.[6]

### d.    Work Product Doctrine

The next issue is whether the attorney-client privilege protects disclosure of the November 13, 2006 Letter.

### i.    Application of the Privilege

In support of her motion, Crosby argues that the document falls under the work product doctrine because it contains her counsel's "advice, thoughts and comments."  (R. Doc. 209-1, p. 3). Crosby argues that there is a strong public policy protecting work-product materials, and that even voluntary disclosure of such materials, without more, does not constitute a waiver of the privilege. *Id.* at 3-4. In opposition, Blue Cross argues that the November 13, 2006 Letter is not protected by the work product doctrine because Crosby has failed to show that it was prepared to aid in future litigation. (R. Doc. 213, p. 10).  Blue Cross specified at oral argument that the fact that Crosby had not received treatment at the time the letter had been prepared solidified this result.

The work-product doctrine protects materials prepared by or for in attorney in preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947).  "The privilege can apply where litigation is not imminent."  *In re Kaiser Aluminum and Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000).  Instead, and similar to the test for attorney-client privilege, "[t]he 'test' for work-product protection is whether, in light of the nature of the document and the factual situation in the particular case, the document can

---

[5]The Court clearly does not have the institutional competency to determine whether the excerpt, which is a single page of the November 13, 2006 Letter, was sufficient for the doctors to act upon Crosby's apparent motive.  For present purposes, it suffices to show that Crosby in fact *had* that motive.

[6]Although this ground is sufficient to end the inquiry, the Court also notes that alternatively she would have waived the privilege by failing to object when the November 13, 2006 Letter was offered at the deposition of Drs. Garber and Salama.

fairly be said to have been prepared of obtained because of the *prospect* of litigation." *Kansas City Southern Railway v. Nichols Construction Co., L.L.C.*, Nos. 05-1182, 05-220, 05-4653, 2007 WL 1792352, at *2 (E.D. La. June 20, 2007) (internal quotation marks omitted). "The privilege derived from the work-product doctrine is not absolute." *United States v. Nobles*, 422 U.S. 225, 239 (1975).

Again, the circumstances surrounding the production of the November 13, 2006 Letter suggest that it was prepared with the *prospect* of litigation in mind, as it was drafted by an attorney who now represents Crosby, contained analysis of provisions in a policy which became the subject of the instant litigation, and contains statements such as "we can argue," "we may argue," "our job is to find a means by which to argue," and "[i]t is my suggestion that we attack."

## ii.  Waiver of the Privilege

The next issue is whether the privilege has been waived. Unlike waiver of the attorney-client privilege, Crosby's original submission of the document to her doctor did not constitute a waiver of the work-product doctrine because "[w]ork product protections, unlike the attorney-client privilege, are held by the attorney as well as the client. . . . Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). "A waiver by the client does not foreclose the attorney's right to raise the privilege." *S.E.C. v. Powell*, 2007 WL 3256205, at *2 (E.D. Tex. Nov. 2, 2007) (citing *Nobles*). In this case, Crosby's attorneys clearly remained free to assert the privilege after Crosby's "waiver."[7]

Therefore, the Court must consider whether waiver occurred as a result of Crosby's acquiescence to production of the excerpt of the November 13, 2006 Letter during the deposition of

---

[7]Because Crosby's counsel remained in control of the privilege and could exercise it notwithstanding the fact that Crosby relinquished the document, the issue of whether Crosby and her doctors had a "common business interest" which withstood Crosby's disclosure of the excerpt to them is not relevant.

Drs. Garber and Salama.  "[T]he mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Sheilds v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).  Indeed, "[c]ounsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, *and often relies on them in examining witnesses.*"  *Nobles*, 422 U.S. at 240 n.14 (emphasis added).  Instead, the issue is whether counsel attempts to make some form of *testimonial* use of these materials that waiver occurs.  *Id.*

Accordingly, courts have drawn a distinction between use of the privileged material in *preparation* for further legal action, and affirmative *use* of the information in a testimonial setting.  *See,* e.g., *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) (finding waiver when no objection is made to introduction of privileged material by a party's own witness, the work product privilege is waived); *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998) (finding that waiver could occur under F.R.E. 612 where a privileged document is used to refresh witnesses' recollection).  Admittedly, these cited cases concern the *offensive* use of testimonial information.  However, other courts have found that the difference is not whether the use was offensive or defensive, but rather whether the failure to object was part of a "calculated plan."  *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 617 (S.D.N.Y. 1977).

In this case, Crosby argues that her attorney allowed Blue Cross' counsel, at a deposition noticed by Blue Cross, to hand the excerpt to a deponent because the document was the most easily available source for certain policy definitions.  This is not a clearly "offensive" use, but was clearly intended to further a "testimonial" use because the document was provided to Drs. Garber and Salama at the deposition so that they could analyze, and subsequently testify about, certain policy provisions.  Further, Crosby does not explain why her counsel in attendance at the deposition failed to object to or otherwise limit the use the document at the deposition; Crosby has merely stated that at the time of

14

the deposition, her counsel simply did not know what the document was.  (R. Doc. 209-1, p. 1).

Notwithstanding the fact that Crosby may have originally thought, in contravention to the advice of

her counsel, that submission of the November 13, 2006 Letter to her doctors would be "beneficial,"

there is no reason why Crosby would have then allowed an excerpt of the document to be produced.

Therefore, the Court finds that Crosby indeed waived the work-product doctrine as relates to

the November 13, 2006 Letter by acquiescing to use of the excerpt at the deposition of Drs. Garber and

Salama.[8]  For this reason, the Court finds that Crosby is not entitled to a Protective Order against

further use of the excerpt from the November 13, 2006 Letter.

### C.  <u>Compliance with Discovery Requests</u>

The final issue is whether the November 13, 2006 Letter should be produced in full to Blue

Cross pursuant to Blue Cross' discovery requests.  Although not part of the instant motion, the issue

is included in Blue Cross' Opposition, and was raised at oral argument.  The Court agreed to take oral

arguments on the matter and dispose of it in the course of the instant motion after both parties

consented to the same.  There are two discovery-related claims involved in this argument, both of

which had been introduced into the record by Blue Cross in their opposition to the instant motion.[9]

### 1.  Waiver of Objections to February 10, 2012 Request

#### a.  Discovery Requests and Prior Proceedings

The first issue is whether Crosby's waiver of her privilege objections to two discovery requests

which Blue Cross propounded upon Crosby on February 10, 2012 requires her to now produce the

---

[8]For this reason, there is no need to address whether Blue Cross has demonstrated (1) a substantial need for the document, or (2) whether *in camera* review of the document indicates that any portions of the November 13, 2006 Letter should be redacted.

[9]All formatting and spelling of the various requests appears as submitted.

November 13, 2006 Letter.  Blue Cross argues that the requests pertaining to the November 13, 2006

Letter were as follows:

### REQUEST FOR PRODUCTION NO. 1

Please produce all documents relating or referring to the "claims" submitted to Blue
Cross referenced in Paragraph 14-B of your Amended Petition.

(R. Doc. 213-1, p. 7).  Paragraph 14-B of Crosby's Amended Petition states that:

Plaintiff's doctors submitted claims on various occasions for coverage and
reimbursement to defendant for all of the treatments and medical expenses incurred by
plaintiff in connection with halting and attempting to correct her disease.

(R. Doc. 118, p. 2).

### REQUEST FOR PRODUCTION NO. 8

Please produce all documents referring or relating to your allegation in Paragraph 17
of your Amended Petition that Blue Cross "misrepresented to plaintiff the pertinent
provisions relating to the Policy and benefits at issue."

(R. Doc. 213-1, p. 8).  Paragraph 17 of Crosby's Amended Petition states that:

Defendant Blue Cross owes a fiduciary duty and other obligations and duties to
plaintiff under the policy and applicable federal laws and regulations. Defendant
breached its fiduciary duty and other obligations by interfering with plaintiff's rights
to receive benefits under the Policy. Those breaches include, but not by way of
limitation:
. . . .
       d. Blue Cross knowingly and intentionally misrepresented to plaintiff the
pertinent provisions relating to the Policy and benefits at issue, and thereby wrongfully
denied the benefits;

(R. Doc. 118, pp. 2-3).  These requests were previously subject to a Motion to Compel filed on April

10, 2012.  (R. Doc. 150-2, pp. 7-8).  Crosby then provided, on April 12, 2012, what Blue Cross

characterized as an inadequate response to its requests.  (R. Doc. 152).  Specifically with respect to

Request No. 1, Crosby stated that:

See Exhibits "1" - "5" attached hereto.  See also correspondence between Plaintiff's
doctors and Blue Cross and Plaintiff's counsel and Blue Cross, which are partially

included in the incomplete Administrative Record, but are also contained in the documents received through Blue Cross's subpoena to Drs. Garber and Salama; the documents and records contained in the incomplete Administrative Record; the documents produced by Drs. Salama and Garber in response to Blue Cross's subpoena; and the document previously produced in discovery -- all of which are already in Blue Cross' possession. All treatment by all doctors was made subject of claims to Blue Cross; see treatment and account records. Plaintiff reserves the right to supplement this response as discovery and depositions progress and/or to present at trial evidence that defendant has made misrepresentations and concealments relative to the claims for coverage of treatment of Plaintiff.

(R. Doc. 152-1, pp. 7-8). With respect to Request No. 8, Crosby stated that:

Plaintiff objects to this request on the grounds that it is premature. See documents contained in (and absent from) the incomplete Administrative Record, the communications between/to/from Plaintiff and Blue Cross, ERISA, the plan/policy, case law regarding Blue Cross's procedures, and *the documents produced by Drs. Salama and Garbe in response to Blue Cross's subpoena*, all of which are already in the possession of Blue Cross. Plaintiff reserves the right to supplement this response as discovery and depositions progress.

(R. Doc. 152-1, p. 11) (emphasis added). In connection with that Motion, on May 9, 2012, the Court ordered Crosby to submit her reasons for failing to respond to the February 10, 2012 request. (R. Doc. 178). Crosby responded on May 16, 2012. (R. Doc. 179). Therein, Crosby provided a 1.5 page response to why, *inter alia*, Request for Production No. 8 was inappropriate, but it never asserted privilege as the basis for its objection. *Id.* at 2-3. Crosby provided no objection to Request for Production No. 1 at all. Ultimately, the Court deemed Blue Cross' objections to the discovery waived, and ordered Crosby to respond, although the Court did not explicitly state whether such waiver pertained to privilege objections. (R. Doc. 184). Blue Cross argues in its Opposition to Crosby's motion that although Crosby provided supplemental responses on July 3, 2012, it did not provide the November 13, 2006 Letter on its privilege log. (R. Doc. 213, p. 5).

17

**b.      Relevance of Requests to Produce the November 13, 2006 Letter**

At oral argument Blue Cross contended specifically that the Court should order Crosby to produce the entire Memorandum in response to its discovery responses because (1) the document was not privileged, because this was not stated at the time of disclosure; (2) it was not work product because of the timing, i.e., there was no treatment plan or claim at the time the document was produced; and (3) in any case the Court had found that Crosby had waived all of her objections.[10]

In opposition, Crosby argued that the document did not need to be included in a privilege log or otherwise objected to in connection with its responses to Blue Cross' discovery requests subject to Blue Cross' April 10, 2012 Motion to Compel, because at the time the November 13, 2006 Letter was produced, there were no "claims" pending against Blue Cross, Crosby's doctors had not yet developed a treatment plan for her condition, and therefore no portions of the letter were responsive to Blue Cross' requests.  Crosby also argued that notwithstanding technical compliance with Rule 26, the disclosure issue had become a distraction from the inevitable trial.

The Court finds that notwithstanding the waiver of Crosby's objections, such a waiver is irrelevant as to Requests Nos. 1 and 8.  Blue Cross' Request No. 1 pertains to "all documents relating to or referring to the *claims*" which Crosby's doctors had actually submitted (R. Doc. 213-1, p. 7) (emphasis added).  At the time the November 13, 2006 Letter was written, Crosby had yet to seek treatment for her injuries or even develop of treatment plan.  Therefore, Crosby properly withheld the November 13, 2006 Letter from disclosure in response to Request No. 1.

Similarly, Request No. 8 requests "all documents referring or relating to . . . [the] allegation that Blue Cross misrepresented the pertinent provisions relating to the Policy and benefits at issue."

---

[10]Although irrelevant for purposes of the instant motion, Blue Cross also argued Rule 26 required Crosby to notify it if they had received a privileged document in their possession, and Blue Cross had no notification of the fact that the document was privileged until Crosby filed the instant motion.  Therefore, Blue Cross' duty to return the document did not accrue until filing the instant motion.

(R. Doc. 213-1, p. 8).  Again, the November 13, 2006 Letter is not responsive to this request because it merely analyzes policy provisions and lays out a proposed course of action.  The *in camera* review mentioned above indicates that the November 13, 2006 Letter never discusses a potential claim for misrepresentation by Blue Cross based on the terms of Crosby's insurance policy, or that any of the analyzed Policy terms are inherently deceptive.  Accordingly, the document is not responsive to Blue Cross' requests, and was appropriately withheld at that time.

### 2.    Subsequent Request on September 5, 2012

The next issue is whether Crosby must be compelled to produce the November 13, 2006 Letter in response to Blue Cross' *subsequent* discovery request, which it propounded upon Crosby on September 5, 2012, and Crosby responded to on October 7, 2012.  This request stated:

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a complete copy of the 8 page memorandum dated November 14, 2006, of which page 3 of 8 was produced by Goldstein, Garber & Salama, LLC in response to the subpoena duces tecum issued by Blue Cross to secure records in advance of the depositions of Drs. Garber and Salama, DDS, a copy of which is attached for your reference.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Objection, the Request seeks privileged materials, and impermissibly seeks to intrude upon and to obtain counsel's work product, mental impressions and/or strategy, and/or materials prepared in anticipation of litigation.  Further, defendant has obtained a portion of a privileged communication which was inadvertently disclosed and/or obtained by defendant.  The materials sought are not subject to discovery.  The document obtained by defendant should be returned and not sued by defendant because, among other reasons, plaintiff apparently inadvertently revealed a portion of an attorney-client privileged communication solely to show Plan language to her doctor, a person covered by the doctor/patient privilege.  Moreover, the privileged communication is not within the scope of any purported waiver of privilege by plaintiff in this litigation.  Any use of the document by defendant is improper and/or the materials sought to be obtained by defendant through the Request are protected.  Additionally and alternatively to privilege and other protections referenced above, the requested material is protected and is not subject to discovery and should be returned

19

pursuant to Federal Rules of Civil Procedure, which protect against disclosure, discovery and/or use of counsel's work product and/or communications to an expert.

(R. Doc. 213-1, pp. 25-26).[11]  In support of their motion, the parties reiterated their arguments with respect to why the document was not privileged.

In this case, Crosby's response to this discovery was timely, because Blue Cross filed its request on September 5, 2012, and 30 days elapsed on October 5, 2012, which was a Friday.  Crosby actually produced discovery on October 7, 2012, which was a Sunday, and another "business day" had not yet elapsed.  (R. Doc. 213-1, pp. 24, 27).  The Court has already evaluated application of all of Crosby's objections under the common interest, doctor-patient, and attorney-client privileges, as well as the work product doctrine, and found that none of them now apply to bar further use of the excerpt from the November 13, 2006 Letter.  The Court now finds that because Crosby voluntarily produced the excerpt, she has waived her right to object to the entire November 13, 2006 Letter because "disclosure of any significant portion of a confidential communication waives the privilege as a whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (internal quotation marks omitted).

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Jete Crosby's, ("Crosby") **Motion to Strike and for Protective Order (R. Doc. 209)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** as to Crosby's Motion to Strike Exhibit A of  Defendant, Blue Cross Blue Shield of Louisiana's, ("Blue Cross") **Motion for Summary Judgment (R. Doc. 195-4)** and Exhibit A of Blue Cross' **Motion for Summary Judgment (R. Doc. 203-4)**.

It is **DENIED** as to Crosby's request for a Protective Order.

---

[11]The reference to "November 14, 2006" in Blue Cross' Request appears to by a typographical error.

**IT IS FURTHER ORDERED** that **Blue Cross' Oral Motion to Compel Crosby's Compliance with Production Requests (R. Doc. N/A)**, argued during oral argument of R. Doc. 209 by consent of all parties and the Court on Wednesday, October 12, 2012, is **GRANTED IN PART** and **DENIED IN PART**.

It is **DENIED** as to Blue Cross' Requests for Production Nos. 1, 8, as contained in R. Doc. 213-1, pp. 7-8.

It is **GRANTED** as to Blue Cross' Request for Production No. 1, as contained in R. Doc. 213-1, p. 25).

**IT IS FURTHER ORDERED** that Crosby shall provide a copy of the November 13, 2006 Letter to Blue Cross **no later than seven (7) days** of the issuance of this Order, **Wednesday, November14, 2012,** at **5:00 p.m.**

New Orleans, Louisiana, this 7th day of November 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**