UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JETE CROSBY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-693** |
| **BLUE CROSS/BLUE SHIELD OF LOUISIANA** | **SECTION: "S" (4)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Jete Crosby's Motion for Summary Judgment (Doc. #193) is **GRANTED**, and this matter is **REMANDED** to the plan administrator for a full and fair review of all of Crosby's claims submitted in connection with her treatment for idiopathic cervical root resorption.

**IT IS FURTHER ORDERED** that Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana's Renewed Motion for Summary Judgment (Doc. #195) is **DENIED**.

### BACKGROUND

This matter is before the court on cross-motions for summary judgment.  Plaintiff, Jete Crosby, argues that she is entitled to summary judgment because defendant's claims process did not comply with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and the applicable federal regulations, and the health insurance policy covers the procedures at issue.  Defendant, Louisiana Health Services & Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana,  argues that it is entitled to summary judgment because its claims process substantially complied with the law, and Crosby's procedures were unambiguously excluded under the health insurance policy's dental exclusion.

Crosby is an insured under a health insurance plan issued by Blue Cross, through her husband's employer, John L. Crosby, LLC. Crosby suffers from "idiopathic cervical root resorption," which causes loss of teeth and requires bone, gingival, and dental implants. Blue Cross denied Crosby's claim for coverage for treatment of this condition, finding that the treatment she received was not covered due to the policy's dental exclusion.

*Relevant Plan Provisions*

The plan states:

> **ARTICLE XVI.  LIMITATIONS AND EXCLUSIONS**
>
> \*   \*   \*
>
> B. ... Unless otherwise shown as covered in the Schedule of Benefits, the following are not covered, **REGARDLESS OF CLAIM OF MEDICAL NECESSITY:**
>
> \*   \*   \*
>
> 25. Dental Care and Treatment and dental appliances except as specifically provided in this Benefit Plan under Oral Surgery Benefits.

"Dental Care and Treatment" is defined in the plan as:

> All procedures, treatment, and Surgery considered to be within the scope of the practice of dentistry, which is defined as that practice in which a person:
>
> A. represents himself/herself as being able to diagnose, treat, correct, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, jaws or associated parts and offers or undertakes by certain means to diagnose, treat, correct, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same;

>B. takes impressions of the human teeth or jaws or performs any phase of any operation incident to the replacement of a tooth or part of a tooth or associated tissues by means of a filling, crown, denture, or other appliance; or
>
>C. furnishes, supplies, constructs, reproduces, repairs or offers to furnish, supply, construct, reproduce, or repair prosthetic dentures, bridges, or other substitute for natural teeth to the user or prospective user.

The plan provides limited oral surgery benefits as follows:

>**ARTICLE XII. ORAL SURGERY BENEFITS**
>
>Coverage is provided only for the following services or procedures:
>
>\* \* \*
>
>C. Dental Care and Treatment including Surgery and dental appliances to correct Accidental Injuries of the jaws, cheeks, lips, tongue, roof or floor of mouth, and of sound natural teeth.
>
>\* \* \*
>
>E. Incision and drainage of abscess and treatment of cellulitis.

>Accidental Injury is defined as:
>
>>A condition occurring as a direct result of a traumatic bodily injury sustained solely through accidental means from an external force. With respect to injuries to teeth, injuries caused by the act of chewing do not constitute an injury caused by external force.

The plan provides that if a claimant is dissatisfied with a coverage decision, the claimant has the right to pursue two levels of an internal administrative appeal with Blue Cross. Under the plan, claimants are "encouraged to submit written comments, documents, records, and other information relating to the claim for benefits." The plan further provides that "[p]ersons not involved in previous decisions regarding the Member's claim will decide all appeals."

3

*Crosby's Claim for Benefits*

On October 6, 2006, Crosby saw James A. Moreau, Jr., D.D.S. for a second opinion regarding a lower right tooth. After reviewing the radiographs, Dr. Moreau diagnosed Crosby with multiple idiopathic cervical root resorption. On October 9, 2006, Crosby followed up with her regular dentist, Beth Saacks, D.D.S. Dr. Saacks noted that the radiographs taken by Dr. Moreau showed that Crosby had "generalized cervical root resorption on every tooth," and found that the condition was idiopathic, i.e. had no known cause. On October 14, 2006, Crosby consulted with Corkey Willhite, D.D.S., who referred her to two periodontists, David A. Garber, D.M.D. and Maurice A. Salama, D.M.D.. Drs. Garber and Salama are licensed to practice as dentists by the Georgia Board of Dentistry. Neither Dr. Garber nor Dr. Salama is a medical doctor, and neither holds any medical licenses in any state.

On November 28, 2006, Drs. Garber and Salama performed radiographic and CT scans on Crosby, and diagnosed her with multiple idiopathic cervical root resorption of the mandibular teeth. The periodontists indicated on the health claim form that Crosby's condition was not the result of an accident. On January 8, 2007, Crosby had several teeth extracted, and had bone, gingival, and dental implants. The health claim form submitted by the periodontists indicated that the procedures were not necessitated by an accident. Thereafter, Drs. Garber and Salama submitted Crosby's extracted teeth and the radiographs of her mouth to the Department of Defense, Armed Forces Institute of Pathology, Department of Oral & Maxillofacial Pathology for an independent evaluation. The report from the Armed Forces Institute of Pathology did not indicate a cause of Crosby's resorption, and noted that there are predisposing factors for external cervical resorption, but that "[i]n many reported cases of invasive external resorption a defined etiology cannot be elucidated

4

suggesting an idiopathic resorptive process." On May 15, 2007, Crosby had additional dental implants; the periodontists again indicated on the health claim form that the procedures were not necessitated by an accident.

On June 4, 2007, in a letter submitted to Blue Cross before the initial claim determination, Crosby's attorney argued that the policy's dental exclusion did not apply because Crosby's root resorption was part of a larger systemic autoimmune process, and not due to dental hygienic neglect. Crosby did not provide to Blue Cross any additional reports or records from medical or dental providers. Crosby's claim was ultimately denied. Blue Cross treated her attorney's letter as a request for a first level administrative appeal of the denial of her claim.

In support of the First Level Appeal, Crosby's attorney submitted letters from her treating dental providers. Dr. Saacks opined that Crosby was in excellent dental health until she presented with "a rare condition of idiopathic cervical root resorption." Crosby's periodontists, Drs. Garber and Salama, opined that as to the procedures they performed, "[w]ithout this form of dentistry this patient would end up in complete dentures and completely edentulous."

Dwight Brower, M.D., Blue Cross's medical director, conducted the First Level Appeal after Donna Fleming, the appeals coordinator, gathered and assembled the documentation. Dr. Brower reviewed Crosby's dental records and letters submitted by Crosby's care providers, a letter submitted by Crosby's counsel, a letter from Dr. Saacks, and the plan language. On July 17, 2007, Blue Cross informed Crosby that her First Level Appeal was denied. The letter informed her that the treatment was not covered. The letter enclosed the relevant portions of the plan, informed Crosby of her right to appeal the denial within 60 days of the notice, and explained how to appeal the denial.

5

On July 26, 2007, Blue Cross wrote to Crosby's counsel:

> ... As explained in the appeal response, the policy contains provisions for oral surgery benefits, and excludes dental care and treatment, unless it is to correct Accidental Injuries. You infer in your letter that Ms. Crosby suffered an accidental injury; however, it is not supported upon review of the above information received.
>
> \*   \*   \*
>
> Your client has a diagnosis of severe idiopathic root resorption, which may be an autoimmune medicated problem. However, the etiology of the condition is not an issue relative to a coverage determination. The services provided your client (extractions other than for impacted teeth, periodontal surgery including bone and gingival grafts, and dental implants) are excluded by this benefit plan. The specific exclusion states: "Dental Care and Treatment and dental appliances except as specifically provided in this Benefit Plan under Oral Surgery Benefits." None of the billed services are covered by this limited oral surgery benefit.
>
> I realize the appeal response is not the response Ms. Crosby would like to receive; however, we must be mindful of our obligation to operate our business appropriately and within the parameters of our contracts and to apply those contractual provisions uniformly to all subscribers. ...

On September 14, 2007, Crosby's attorney requested a Second Level Appeal, and argued for coverage, relying on a plan definition which provides that:

> ... Any operative procedure, treatment or service will not be considered Cosmetic Surgery if that procedure, treatment or service restores bodily function or corrects deformity of a part of the body that has been altered as a result of Accidental Injury, disease or covered Surgery.

Crosby's attorney further argued that Crosby's treatment was necessary to avert the spread of her disease to other areas of the face, skull and skeleton, and that the dental exclusion should not apply. He also stated that while "no doctor has been able to pinpoint the precise cause[,] ... the literature points to chemical/drug reactions and 'trauma' as known causes."

Blue Cross received several emails from members of the dental profession in support of Crosby's appeal that argued for coverage, all of which stated that Crosby's condition was a systemic medical condition.

Blue Cross followed its standard procedure for a Second Level Appeal. Fleming again gathered and assembled the information and documentation for the Member Appeals Committee. The Committee is chaired by a Customer Services Manager, and consists of five voting member: 2 voting members from various departments within Blue Cross; 1 voting member who is an internal or external group leader; 1 voting member who is a Registered Nurse in the Medical Review Department who was not involved in the First Level Appeal decision; and, 1 voting member who is a Medical Director in the Medical Review Department who was not involved in the First Level Appeal decision. When the Committee meets to review the claim, the appeals coordinator provides a summary of the issues on appeal with a member of the medical staff and a member of the legal department present to answer the Committee's questions. These three individuals leave the meeting before the Committee votes. Dr. Brower served as the medical department representative, and Andy O'Brien represented the legal department at Crosby's appeal hearing.

On September 25, 2007, the Committee voted to uphold the denial of Crosby's claim. On October 29, 2007, Blue Cross informed Crosby of the Committee's decision. Blue Cross stated that the denial was based on the plan's exclusionary language and limited oral surgery benefit, and that "the treatment at issue is dental and therefore falls within the language of the exclusion. The coverage determination is based on the treatment involved and is not dependent on the nature or etiology of the condition."

On December 6, 2007, Crosby filed this case in the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana alleging that Blue Cross breached the insurance contract by failing to cover her procedures. On January 18, 2008, Blue Cross removed the matter to the United States District Court for the Eastern District of Louisiana, alleging that Crosby's claims arose under ERISA.

On January 13, 2009, Blue Cross moved for summary judgment, arguing that Crosby's claim should be dismissed because the denial of her claim was not arbitrary and capricious, and because her state law claims are preempted by the ERISA. Blue Cross further contended that summary judgment was appropriate because Crosby could not prove that Blue Cross was arbitrary and capricious in its denial of her claim for benefits. Crosby denied that ERISA applied to the insurance policy, and argued that questions of fact precluded a ruling on whether Blue Cross was arbitrary and capricious in denying her claim.

After Crosby received the administrative record, she sought discovery regarding whether the administrative record was complete, whether Blue Cross complied with ERISA's procedural requirements, and whether Blue Cross had previously afforded coverage for claims related to the jaw, teeth, or mouth. Blue Cross objected to the discovery requests arguing that the scope of discovery was limited to the administrative record. Crosby filed a motion to compel, which was denied by the United States Magistrate Judge.

Thereafter, this court granted Blue Cross' motion for summary judgment and entered judgment, dismissing Crosby's case. The court found that ERISA applied, and that Crosby's state law claims were preempted. Applying ERISA, this court found that Blue Cross's interpretation of

the plan was legally correct, and that Crosby could not demonstrate how the administrative record was not complete.

Crosby appealed this court's granting of Blue Cross's motion for summary judgment and the United States Magistrate Judge's decision to limit discovery to the United States Court of Appeals for the Fifth Circuit. The appellate court found that "the court too narrowly defined the scope of discovery," vacated the judgment and remanded for further discovery.

Specifically, in its July 19, 2011, Opinion in this matter, the United States Court of Appeals for the Fifth Circuit held:

> We find that [Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287 (5th Cir. 1999)(en banc), *abrogated on other grounds by* Metro. Life Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008), *as recognized in* Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 247 n. 3 (5th Cir. 2009)] prohibits the admission of evidence to resolve the merits of the coverage determination – i.e. whether coverage should have been afforded under the plan – unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past or would assist the court in understanding medical terms and procedures. A plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded. Vega does not, however, prohibit the admission of evidence to resolve other questions that may be raised in an ERISA action. For example . . . a claimant may question the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan.

Crosby v. Louisiana Health Serv. and Indem. Co., 647 F.3d 258, 263 (5th Cir. 2011) (internal citations and footnotes omitted).

After the case was remanded to the United States District Court for the Eastern District of Louisiana, the parties conducted discovery in accordance with the United States Court of Appeals

for the Fifth Circuit's July 19, 2011, Opinion. On January 3, 2012, Blue Cross moved for summary judgment, and this court denied that motion because discovery was ongoing.

Blue Cross has filed a third motion for summary judgment arguing that the post-appeal discovery has not revealed any evidence to support Crosby's claim. Blue Cross contends that this court's original order dismissing Crosby's case was correct. Crosby also filed a motion for summary judgment arguing that Blue Cross's administrative claims process was flawed, and that the health insurance plan covers the procedures at issue under the cosmetic surgery exception, the oral surgery exception or the cleft palate provisions.

## ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.      Blue Cross's Substantial Compliance with ERISA**

Crosby argues that Blue Cross failed to comply with ERISA and the applicable federal regulations in its review of her claim. Specifically, Crosby argues that Dr. Brower's presence at the Second Level Appeal gave deference to the First Level Appeal in violation of 29 C.F.R. § 2560.503-1(h)(3)(ii). Crosby also argues that Blue Cross's failure to consult a dentist was a violation of 29 C.F.R. §§ 2560.503-1(h)(3)(iii) and (v), because Blue Cross made a medical judgment that her treatment was dental rather than medical. Additionally, Crosby argues that Blue Cross violated 29 C.F.R. § 2560.503-1(g)(1) by failing to explain to her what additional information she could have provided to obtain coverage. Finally, Crosby argues that Blue Cross violated 29 C.F.R. § 2560.503-1(i)(2)(ii) by sending her denial letter more than thirty-days after the Second Level Appeal was completed.

>Under 29 U.S.C. § 1133, every employee benefit plan must:
>
>>(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
>>(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The purpose of this statute is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." Lafleur v. La. Health Serv. and Indem. Co., 563 F.3d 148, 154 (5th Cir. 2009) (quoting Schneider v. Sentry Long Term Disability, 422 F.3d 621, 627-28 (7th Cir. 2005)). "Challenges to ERISA procedure are evaluated under the substantial compliance standard," which "means that the technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." Id. (internal quotations

11

omitted). "Substantial compliance requires a 'meaningful dialog' between the beneficiary and the administrator." Id. In reviewing "substantial compliance" the court considers all communications between an administrator and plan participant, including oral communication, to determine whether the information provided was sufficient under the circumstances. Id. (quoting Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 436 (6th Cir. 2006)).

The federal regulations promulgated under ERISA provide insight into what constitutes a "full and fair review" pursuant to §1133. The regulations specify that a claims review process "will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination" unless certain procedural requirements are met. Lafleur, 563 F.3d at 154 (quoting 29 C.F.R. §§ 2560.503-1(h)(2) and (3)). The procedural requirements found in 29 C.F.R. § 2560.503-1(h)(3) that are relevant in this case are: (1) that the review must "not afford deference to the initial adverse benefit determination" and may not be "conducted" by the same person who made the initial determination; (2) that when an adverse benefit determination "is based in whole or in part on a medical judgment," the appeal must include consultation "with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment"; and (3) the health care professional consulted in an appeal may not be the same individual who was consulted in connection with the original determination. 29 C.F.R. § 2560.503-1(h)(3)(ii), (iii), (v).

### 1. 29 C.F.R. § 2560.503-1(h)(3)(ii)

Pursuant to 29 C.F.R. § 2560.503-1(h)(3)(ii), to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination a group health plan must:

> provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.

In Lafleur, 563 F.3d at 152-53, Dr. Brower conducted the First Level Appeal, and an appeals committee conducted the Second Level Appeal of Lafleur's claim. However, Dr. Brower was present at the appeals committee meeting during the Second Level Appeal. The United States Court of Appeals for the Fifth Circuit found that "although Dr. Brower arguable only 'conducted' the Level I Appeal, his presence as the primary consultant in both the initial denial and the Level II Appeal effectively gave deference to the initial adverse benefit determination in violation of 29 C.F.R. § 2560.503-1(h)(3)(ii)." Id. at 156-57. The appellate court found that this violation "constituted more than 'technical noncompliance' and prejudiced Lafleur." Id. at 157.

In this case, Dr. Brower conducted the First Level Appeal and was present as the medical consultant at the Second Level Appeal. As the United States Court of Appeals for the Fifth Circuit held in Lafleur, Dr. Brower's presence at the Second Level Appeal in Crosby's case "effectively gave deference" to the First Level Appeal determination. Thus, Blue Cross violated §2560.503-1(h)(3)(ii), and the violation was more than technical noncompliance that prejudiced Crosby because she did not receive a fully independent Second Level Appeal. Id.

### 2. 29 C.F.R. § 2560.503-1(h)(3)(iii) and (v)

Under 29 C.F.R. § 2560.503-1(h)(3)(iii), to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination that is based in whole or in part on a medical judgment the "appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical

13

judgment." Further, if a health care professional is consulted in accordance with §2560.503-1(h)(3)(iii), that person "shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual." Id. at § 2560.503-1(h)(3)(v).

In denying Crosby's claim, Blue Cross made a medical judgment that the treatment she received was dental in nature, rather than medical. Blue Cross made this determination based on the opinions of Dr. Brower and Dr. John Hoppe, neither of whom are dental professionals, or have any specific experience in the types of procedures Crosby underwent. Blue Cross violated §2560.503-1(h)(3)(iii) by failing to consult a health care professional with the appropriate training and experience in making its medical judgment regarding the type of care Crosby received, and the violation was more than technical noncompliance that prejudiced Crosby because her claim did not receive proper review with input from an appropriately trained health care provider.

### 3. 29 C.F.R. § 2560.503-1(g)(1)

Title 29, Code of Federal Regulations, Section 2560.503-1(g)(1) provides that the plan administrator must provide a claimant with written notification of any adverse benefits determination. In Crosby's case, that written notification was required to explain:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's

> right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1(g)(1)(i)-(iv).

Crosby argues that Blue Cross violated this regulation in connection with the July 17, 2007, correspondence that informed her that her First Level Appeal was denied. Crosby argues that under §2560.503-1(g)(1)(iii), Blue Cross should have informed her what additional information she could have obtained to perfect her claim.

The July 17, 2007, letter from Blue Cross to Crosby regarding the result of the First Level Appeal explains that the services she received were excluded under the dental exclusion, and not covered by the limited oral surgery benefits because "[t]he services performed were for the extraction of erupted teeth, not impacted teeth." The letter also stated that the "claims submitted did not contain an accident indicator in block 10 of the claim forms and were not filed with an accident diagnosis code, so they can not be processed under your dental accidental injury benefits."

The October 29, 2007, letter from Blue Cross to Crosby regarding the result of the Second Level Appeal states that the "treatment at issue is dental, and therefore falls within the language of the exclusion." It also states that there was "nothing in the medical information to suggest that your condition is an accidental injury such as might provide coverage under that Benefit."

In the July 17, 2007, correspondence, Blue Cross informed Crosby that her claim would not be considered under the accidental injury coverage of the oral surgery benefit because the appropriate box was not checked on the claim forms. However, in its October 29, 2007, correspondence, Blue Cross indicated that it did not have medical information to suggest that Crosby suffered an accidental injury that might provide coverage. In the Second Level Appeal, Blue Cross obviously considered whether the medical evidence showed an accidental injury. Blue Cross failed

15

to inform Crosby in the July 17, 2007, letter that she should submit medical evidence to support a finding of accidental injury or other cause that would afford her coverage under the oral surgery benefit. Instead, Blue Cross informed Crosby that evidence of accidental injury would not be considered. Therefore, Blue Cross violated §2560.503-1(g)(1)(iii) by failing to inform Crosby of additional information necessary to perfect her claim, and the violation was more than technical noncompliance that prejudiced Crosby because she was not afforded the opportunity to submit all relevant evidence to Blue Cross before the Second Level Appeal.

### 4. 29 C.F.R. § 2560.503-1(i)(2)(ii)

Title 29, Code of Federal Regulations, Section 2560.503-1(i)(2)(ii) provides that Blue Cross had 30 days from the receipt of Crosby's notice appealing the First Level Appeal decision to hold a Second Level Appeal hearing and notify the claimant of the outcome. Crosby requested a Second Level Appeal on September 17, 2007, and Blue Cross notified her that the denial of her claim was upheld more than forty-two days later, on October 29, 2007.

Blue Cross acknowledges that it violated §2560.503-1(i)(2)(ii). However, the violation was a technical noncompliance and Crosby has not demonstrated how she was prejudiced by the late notification of the result of her Second Level Appeal.

### C. Remand to the Plan Administrator

In Lafleur, 563 F.3d at 157, the United States Court of Appeals for the Fifth Circuit explained that a plan administrator's "failure to fulfill procedures requirements generally does not give rise to a substantive remedy," and that substantive damages, which would include a retroactive reinstatement of benefits, would be permitted only when the violations are continuous and amount to substantive harm." Rather, when the plan administrator fails to substantially comply with

16

ERISA's procedural requirements, the appropriate remedy is usually remand to the plan administrator for full and fair review. Id.

In this case, as in Lafleur, the appropriate remedy is remand to the plan administrator for a full and fair review of all of Crosby's claim related to her treatment for idiopathic cervical root resorption in accordance with ERISA and the applicable regulations. Id.

## CONCLUSION

**IT IS HEREBY ORDERED** that Jete Crosby's Motion for Summary Judgment (Doc. #193) is **GRANTED**, and this matter is **REMANDED** to the plan administrator for a full and fair review of all of Crosby's claims submitted in connection with her treatment for idiopathic cervical root resorption.

**IT IS FURTHER ORDERED** that Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana's Renewed Motion for Summary Judgment (Doc. #195) is **DENIED**.

New Orleans, Louisiana, this __9th__ day of November, 2012.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**